## In re NORTH CONTINENT UTILITIES CORPORATION.

### No. 355.

District Court, D. Delaware.

July 7, 1945.

420

See also 54 F.Supp. 527.

David K. Kadane, Sp. Counsel, and Arthur Goldman, both of Philadelphia, Pa., for Securities and Exchange Commission.

Sydney K. Schiff (of Pam, Hurd & Reichmann), of Chicago, Ill., for North Continent Utilities Corporation.

Helmer Hansen, of Chicago, Ill., for Preferred Stockholders' Committee.

LEAHY, District Judge.

The court approved a Sec. 11(e) plan of North Continent Utilities Corporation under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. See D.C., 54 F.Supp. 527. The plan called for satisfaction of the company's debentures by pro-rata payments of cash as assets were sold from time to time. The March 17, 1944, order of approval provided, among other things, that the Court take exclusive jurisdiction over the company and its assets. Paragraph 2 of the order specifically provides: "North Continent Utilities Corporation shall retain possession of its assets and continue the operation of its business through its officers, directors and employees and in accordance with its Articles of Incorporation and its By-Laws, except as otherwise provided by this Order or any subsequent order herein". The SEC now moves to amend the above paragraph by adding an additional sentence which will read: "North Continent Utilities Corporation until further order of this Court may enter into transactions not inconsistent with the plan, including sales of its assets or assets of its subsidiaries, upon the filing of appropriate applications and declarations with, and the entry of appropriate orders by the Securities and Exchange Commission, in conformity with the Public Utility Holding Company Act of 1935 and the rules, regulations and orders promulgated and issued thereunder."

■ The proposed amendment should be allowed. The plan contemplates complete liquidation of North Continent. Since the order of approval was entered, it has been and now is disposing of its assets by selling portfolio securities and physical assets of its subsidiary companies engaged in the gas and electric utility business and in the ice and mining nonutility businesses. The proposed amendment, in short, simply affirms the SEC's reservation of jurisdiction in its order approving the plan under date of November 16, 1943, i. e., its reserved jurisdiction in respect of "any steps taken to effectuate disposition of North Continent's assets". As assets are transmuted into cash, Sec. 12(d) of the Act becomes operative. That section provides: "It shall be unlawful for any registered holding company, by use of the mails or any means or instrumentality of interstate commerce, or otherwise, to sell any security which it owns of any public-utility company, or any utility assets, in contravention of such rules and regulations or orders regarding the consideration to be received for such sale, maintenance of competitive conditions, fees and commissions, accounts, disclosure of interest, and similar matters as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers or to prevent the circumvention of the

provisions of this title or the rules, regulations, or orders thereunder."

The question raised by the motion to amend the order of March 17, 1944, is whether approval of this court must also be obtained in respect of each sale of assets, because this court has retained exclusive jurisdiction of those assets. We do not think that such court approval is necessary.

Homewood v. Standard Power & Light Corporation, D.C.Del., 55 F.Supp. 100, 103, suggested the necessity to integrate the Public Utility Holding Company Act into the judicial process in view of the SEC's statutory duties. The present matter is another illustration of the same thought. Sec. 12(d) was designed to protect investors against any sacrifice of their equity in the sale of their assets.[1] SEC's Rule U—44 was promulgated to carry Sec. 12(d) into effect.[2] Form U—1 is a declaration which must be filed in connection with the sale of any asset. It provides for minute exposition; for example, there must be disclosure as to the nature of the assets involved, all relevant financial data, terms and conditions of sale, etc. SEC's staff, consisting of attorneys, analysts, accountants and engineers, then goes into action. Their expert competence is shown by the fact that from December 1, 1935, to June 30, 1944, 692 orders have been entered respecting sales of utility assets. In the fiscal year ending June 30, 1944, 272 of such orders have been entered. No federal court in our system has had such specialized experience.

Moreover, practical considerations must be examined. If sales must be approved by both SEC and court, the apparent difficulties inherent in a single situation show the impracticability of such duality of administrative and judicial approval. To take the instance where portfolio securities are sold for resale by the buyer, the usual form of underwriting agreement provides for such resale within not more than 48 or 72 hours. SEC is adequately equipped, with its trial examiners, to conduct hearings on the appropriateness of price and underwriting spread, so that the Commission may enter its order within the stated period. If in addition court approval of such underwriting were always required, another hearing would likewise be required, after notice given, and it is doubtful if the usual form of underwriting agreement could be utilized.

Underwriters' risk increases commensurately with the period between the signing of the agreement and the time of resale of the securities to the public. The time factor defines the size of the spread. Neither the SEC nor the court would approve a sale by an unusual underwriting which would substantially diminish the return the company would ultimately receive for the sale of its assets.

The ruling here simply approves what the court believes to be a pure piece of administrative business—disposition of a subject company's assets as an inherent part of a plan of liquidation after notice and opportunity for hearing and critical examination by the SEC and its staff. If a party is of belief that the sales price of a particular asset is grossly inadequate because of an arbitrary fixation of values, there has been no suggestion that such party may be deprived of a judicial review, either in the District Court of enforcement or to a Circuit Court of Appeals under Sec. 24(a).[3] But, such observations are by way of obvious dicta, for no one has, as yet, raised the point. The precise prob-

[1] The Congressional intent is clear: "Subsection (d) [of Section 12] prohibits registered holding companies from disposing of their assets and securities in contravention of the rules and regulations of the Commission regarding costs, accounts, competitive bidding, fees, disclosure of interest, and similar matters so that both the investor and the underlying properties may be protected in the reorganization of the systems. This section is essential to prevent piecemeal evasion of the reorganization safeguards set up in Section 11 and to prevent the sacrifice of the investors' equity." S. Rep. 621, 74th Cong., 1st Sess., p. 35.

[2] There is one class of sales which does not come before the Commission: "sales of securities or utility assets to a Federal or State government or to any subdivision, agency, or instrumentality thereof" have been exempted by the Commission in Rule U—44(b) (3). The basis for such rule, the avoidance of supervision of the activities of government instrumentalities, is founded on the same principles of comity which we think should be persuasive with this court.

[3] Whether the District Court of enforcement is the exclusive tribunal, once a plan has been submitted for approval, see Okin v. Securities and Exchange Commission, 2 Cir., 145 F.2d 206, certiorari granted 65 S.Ct. 1569.

lem attempted to be met here is the simple separation of the functions of court and SEC for the purpose of carrying out a plan that has already been approved by both SEC and court.

The motion for an amendatory order is granted.